SOWDER et al. v. NORTH TEXAS STATE BANK.

(Court of Civil Appeals of Texas. Ft. Worth. March 15, 1913. Rehearing Denied April 19, 1913.)

SUBROGATION (§ 14*)—DISCHARGE OF OBLIGATIONS.

Where a purchaser of personal property, as part of the consideration, paid off a chattel mortgage intending to discharge it, he is not, where another chattel mortgagee sought to subject the property to his lien, entitled to be subrogated to the lien of the original mortgage; it having been discharged with intention to release the lien.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 35–39; Dec. Dig. § 14.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by the North Texas State Bank against R. C. Sowder and another. From a judgment for plaintiff, defendants appeal. Affirmed.

W. P. Ellison and M. M. Park, both of Dallas, and Mike E. Smith, of Ft. Worth, for appellants. R. J. Rhome and Spoonts, Thompson & Barwise, all of Ft. Worth, for appellee.

DUNKLIN, J. This appeal is by Charles Hodges and R. C. Sowder from a judgment rendered against them in favor of the North Texas State Bank for a conversion of certain personal property upon which the bank claimed a lien. The case was tried without a jury and the trial judge has filed findings and conclusions as follows:

"(1) On September 29, 1909, the defendant Sowder made, executed, and delivered to the plaintiff bank his promissory note in writing in the sum of $4,000 due six months after date, with interest at the rate of 10 per cent. per annum from maturity of note, providing for an additional amount of 10 per cent. on principal and interest as attorney's fees if the note should be sued on and placed in the hands of an attorney for collection. On October 15, 1909, the said Sowder executed another note to the said bank in the sum of $2,000 due in 60 days from date, bearing 10 per cent. interest from maturity, and having the same provision as to attorney's fees as the note above. That on March 3, 1910, there was paid on the $2,000 note the sum of $1,500. That on March 26, 1910, there was paid on the $4,000 note above the total sum of $245. The total amount of principal, interest and attorney's fees due at the date of the judgment (March 9, 1912) is $887.03 on the $2,000 note, and $4,944.72 on the $4,000 note. It was admitted that the attorney's fees on the note were recoverable as a part of the debt. All securities have been sold by plaintiff and applied as credits on the two notes, leaving a balance as above stated.

"(2) Contemporaneous with the execution of the $4,000 note and as a part of the transaction, defendant Sowder made, executed, and delivered to plaintiff bank a chattel mortgage lien for the purpose of securing said note on certain barber shop fixtures, supplies, and equipment then owned by said Sowder, situated in the city of Dallas, Dallas county, Tex., and which was known as the Southland Hotel Barber Shop in said city of Dallas. That this mortgage was forthwith filed and deposited with the county clerk of Dallas county, Tex., for registration, said mortgage being a valid one, and registered in Dallas county on September 23, 1909, and that the said bank loaned to the said Sowder the $4,000 represented by said note, which was paid to said Sowder in cash, and that as a part of the transaction in which the $2,000 note above mentioned was given to said Sowder, made, executed, and delivered to the plaintiff bank on October 15, 1909, a chattel mortgage lien on cer-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

tain barber shop fixtures and equipment situated in the city of Dallas, Dallas county, Tex., and being known as the Wilson Building Barber Shop in said city, and said mortgage lien so given was forthwith registered by said plaintiff bank in the office of the clerk of the county court of Dallas county, Tex., to wit, on October 16, 1909, so as to constitute a valid mortgage. That said $2,000 note represented a loan of that amount paid by the plaintiff to the said Sowder in cash. Said mortgages, as aforesaid, each provided that if the indebtedness therein described is paid at or before its maturity then the instrument is to be void, but in case the indebtedness is not paid at its maturity, or if the property be removed, then the holder of the indebtedness is authorized to seize and take the property into his possession wherever it may be found, which the mortgagor binds himself to deliver and the mortgagee is authorized to sell, convey, and deliver the property to the purchaser at such sale, and said mortgages provide for either public or private sale, and with or without notices; then the proceeds of such sale shall be applied to the payment of the note described, and of the surplus to the mortgagor, or at the election of the holder of the note, such surplus shall be paid on any other liability or indebtedness held by the holder of the note secured and owed by the mortgagor. And I find that the defendants Lapham and Hodges had both actual and constructive notices of the existence of said mortgages executed by the said Sowder in favor of the said plaintiff, and at the time they became the purchasers of the property. Said mortgages contained covenants of general warranty as to title. Plaintiff did not know of any liens on said property when it made the loans, but after investigation believed its liens were first and only liens, and, so believing, made the loans on the strength of the mortgages.

"(3) I find that on or about February 10, 1910, the defendants Chas. Hodges and T. B. Lapham purchased the property in the two barber shops above mentioned, and on which plaintiff bank had a lien as aforesaid, at the total price of $10,053.50 and took proper conveyances thereof from said Sowder, and have since that time continued in the possession of the said property as aforesaid, claiming to own and hold the same as owners thereof by the purchase from said Sowder, and in repudiation of the liens thereon of plaintiff bank, and not recognizing said liens of said bank, nor any right of said bank to or in said property. That the property known as the Southland Hotel Barber Shop, at the time of the purchase and conversion thereof by the said defendants Hodges and Lapham, was of the value of $6,500. That the property known as the Wilson Building Barber Shop purchased by said Hodges and Lapham, on said date, and when converted, was of the value of $7,000. That a large portion of the fixtures of each of said shops has been taken therefrom and disposed of by the defendants Lapham and Hodges and without the knowledge or consent of plaintiff, and shipped out of Texas by said defendants.

"(4) That the said property was paid for by the said Hodges and Lapham when purchased from Sowder as aforesaid in this way: Said Hodges and Lapham agreed to pay to S. Loveless the amount of a certain note executed by Sowder to Loveless of date October 28, 1909, in the principal sum of $4,500, which, with interest and attorney's fees added at the date of the purchase by Lapham and Hodges from Sowder, aggregated $5,204.70. This amount was secured by chattel mortgage lien given by Sowder to Loveless on the Wilson Building Barber Shop, which note and mortgage was dated October 28, 1909, but which mortgage was not registered with the clerk of the county court of Dallas county until November 8, 1909. Defendants Lapham and Hodges agreed to pay, and did pay, an indebtedness in the sum of $3,848.65 then owed by the said Sowder to the First State Bank of Dallas. This indebtedness was made up of two items, to wit: $1,125, which was the principal sum of $1,025 and $100 interest, and secured by chattel mortgages lien on the Wilson Building Barber Shop, but given and recorded subsequent to the Loveless lien and subsequent to the lien in favor of the plaintiff bank. The other item was $2,731.35, and represented the principal sum of $2,600 and interest in the sum of $131.35. This $2,600 note so held at that time by the First State Bank of Dallas was a note that had been executed by one P. G. Cameron to one T. J. Addison on July 12, 1909, and secured by chattel mortgage lien given by the said Cameron to the said Addison at said time on the Southland Hotel Barber Shop, and which said chattel mortgage lien was forthwith registered with the county clerk of Dallas county, Tex., and was a valid and subsisting lien on said property up until its payment to said bank as hereinafter shown, and until that time was the superior lien on said property as between it and the said lien of the said plaintiff bank as aforesaid. The difference between the aggregate of the aforesaid sum so paid out by Lapham and Hodges, and the total purchase price of the property, has never been finally settled as between the said Lapham and Hodges and said Sowder; but the said Lapham and Hodges had charged up against the said Sowder certain amounts in the way of taxes on said property, unpaid bills, etc., in the sum exceeding the difference between the amounts paid out by Lapham and Hodges and the amounts agreed by them to be paid for said property, and which said amounts Lapham and Hodges agreed to pay at the time of the making of their trade with Sowder on or about February 10, 1910.

"(5) I find that there was presented to Lapham and Hodges at the time of their pur-chase from Sowder of said property a forged release of the liens of the plaintiff bank as aforesaid. Said Sowder also, at the time of said train, represented to Lapham and Hodges that said liens were paid off, and that there were no incumbrances against said property other than the ones that said Lapham and Hodges· agreed to pay off and did pay off a part of the purchase money for said property. But the agreement between Hodges and Lapham, on the one side, and Sowder, on the other, as well also as between these parties and Loveless and the First State Bank of Dallas, was that the said amount should be paid off, and discharged and canceled, and there was no agreement or understanding that the Loveless lien or the First State Bank liens should be transferred or assigned or kept alive. Said Loveless and said First State Bank executed releases at the time of the payments to them of their liens, and reciting the payment in full of their debts respectively, and that it was the intention of all parties to said transactions that said debts would be paid, fully liquidated, and discharged. I find further that Lapham and Hodges believed the statements made by said Sowder as to the said incumbrances, and relied on the same; that they had an attorney to examine the records of Dallas county, and who reported to them that there were no liens against the property except the ones of the First State Bank and the Loveless lien, and said Lapham and Hodges also relied on the release of the liens of plaintiff bank as being genuine and not forged, but such release was forged and not genuine.

"(6) I further find that on September 15, 1909, S. Loveless owned the Wilson Building Barber Shop; that he on that date entered into a written contract with defendant Sowder to sell him the shop, and Sowder then paid the sum of $500 to Loveless as part of the purchase money, with the understanding that the balance of the purchase money was to be paid in cash by October 1, 1909; that Sowder did not appear on October 1st, and the matter was carried along until the 28th of October, when the trade was consummated, and, instead of paying the entire balance due in cash, Sowder executed to Loveless his note for $4,500, the total consideration to be paid by Sowder to Loveless being $7,000. The note so given by Sowder to Loveless was secured by chattel mortgage lien on the Wilson Building Shop. But this mortgage was not registered with the county clerk of Dallas county until the 9th of November, 1909, and this note and lien is the one referred to as having been paid off and discharged by Lapham and Hodges at the time of their purchase from Sowder as before herein stated.

"Conclusions of Law.

"1. I conclude as a matter of law that the lien of the plaintiff bank on the Wilson Building Barber Shop is superior to that created by the lien given by Sowder to Loveless on October 28, 1909, for the reason that the Loveless lien was ·not registered for 12 days after the same was given but held by him.

"2. I conclude that Hodges and Lapham are not entitled to resist the lien of the plaintiff bank ·on the Southland Hotel Barber Shop by reason of having paid off the $2,600 with interest to the First State Bank, for the reason that it was the intention and the agreement of all the parties to that transaction to pay off and discharge that indebtedness and lien, and, such being true, there was no subrogation in favor of Lapham and Hodges as to said lien and indebtedness.

"Judgment is therefore now entered in favor of plaintiff bank against the defendant Sowder for the entire amount due on said note, and against the defendants Lapham and Hodges as ·for conversion of the mortgagee's property and to the extent of $5,831.75, together with interest thereon in favor of the plaintiff as against the defendant R. C. Sowder at the·rate of 10 per cent. per annum, and together with interest on said sum in favor of the plaintiff as against the defendants Charles Hodges and T. B. Lapham at the rate of 6 per cent. per annum."

Many assignments of error are presented to the conclusions of fact and law so found; but, after a careful examination of the record, we are of the opinion that the findings of fact are supported by the evidence and that the conclusions of law and the judgment rendered are correct.

·We therefore overrule all assignments of error, adopt the finding and conclusions of the trial court, and affirm the judgment.